UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | |
| ADAYANA, INC., ) | Case No. 13-10919-RLM-11 |
| ) | |
| Debtor. ) | |
| _____ ) | |

**DEBTOR'S MOTION PURSUANT TO 11 U.S.C. §§ 363 AND 365 FOR (A) AUTHORITY TO SELL SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES, WITH VALID LIENS TO ATTACH TO PROCEEDS OF SALE, AND (B) ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES TO ATTACH TO THE PROCEEDS OF THE SALE**

Adayana, Inc., debtor and debtor-in-possession (the "Debtor"), by counsel and pursuant to 11 U.S.C. §§ 363(b), (f), (m), and (n) and 365(a); Rules 2002, 6004, and 6006 of the Federal Rules of Bankruptcy Procedure; and Local Bankruptcy Rule B-6004-1, seeks an order (A) authorizing the sale of substantially all of the Debtor's assets free and clear of liens, claims, interests, and encumbrances, with valid liens to attach to the proceeds of the sale, and (B) approving the assumption by the Debtor and assignment of certain executory contracts and unexpired leases. In support, the Debtor states as follows:

**I. Jurisdiction and Venue**

1. On October 15, 2013, the Debtor filed a voluntary chapter 11 petition commencing this case. The Debtor is operating its businesses and managing its property as a debtor-in-possession pursuant to 11 U.S.C. §§ 1107(a) and 1108.

2. No trustee or examiner has been appointed in this chapter 11 case. No official unsecured creditors' committee has been appointed in this case.

3. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and

1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(M) and (N).

    4.        Venue is proper in this district pursuant to 28 U.S.C. §§ 1409 and 1409.

## II. General Background

    5.        The Debtor is a holding company, incorporated under the laws of the state of Minnesota. Its primary assets are its equity ownership interests in two separate operating companies, ABG, an Adayana Company, and Vertex Solutions, Inc. (collectively, the "<u>Debtor Subsidiaries</u>"), one of which is headquartered in Indianapolis, and the other in Virginia. Both of the Debtor Subsidiaries are in the "human capital" business, providing an array of technology–based consulting and training services.

    6.        The Debtor is the sole owner of the capital stock of the Debtor Subsidiaries. A valuation report prepared as of March 31, 2013 valued the Debtor Subsidiaries' stock at approximately $8-12 million. The Debtor also owns personal property with book value of approximately $949,280.

    7.        On or about March 20, 2008, the Debtor Subsidiaries entered into a Credit Agreement with BMO Harris Bank N.A., successor by merger with M & I Marshall & Ilsley Bank, f/d/b/a First Indiana Bank N.A. ("<u>BMO Harris</u>"). Pursuant to the Credit Agreement, as amended from time to time, BMO Harris provided the Debtor Subsidiaries a line of credit in the principal amount of $5,000,000. The Debtor guaranteed all of the Debtor Subsidiaries' obligations under the Credit Agreement, and the Debtor also granted BMO Harris a security interest in substantially all of its assets to secure those obligations. The Debtor did not, however, pledge the capital stock of the Debtor Subsidiaries as collateral under the Credit Agreement. BMO Harris recorded and continued its security interest in the Debtor's assets with the Minnesota Secretary of State. BMO Harris has a secured claim in the approximate amount of

arising from the Debtor's guaranty of the Debtor Subsidiaries' obligations under the Credit Agreement.

8. On or about August 1, 2010, the Debtor entered into a Loan Agreement with ComVest Capital II, L.P. ("ComVest"), pursuant to which ComVest agreed to provide the Debtor with a term loan in the principal amount of $10,000,000. On August 10, 2010, in connection with the Loan Agreement, the Debtor executed a Convertible Term Note promising to pay ComVest $10,000,000 on July 31, 2014. The Debtor Subsidiaries guaranteed the Debtor's obligations under the Loan Agreement. To secure the amounts due and owing to ComVest by the Debtor, on or about August 10, 2010, the Debtor and the Debtor Subsidiaries executed a Collateral Agreement pursuant to which each granted ComVest a security interest in substantially all of their assets. Under the Collateral Agreement, the Debtor pledged the capital stock of the Debtor Subsidiaries to secure its obligations under the Loan Agreement. ComVest recorded its security interest in the Debtor's assets with the Minnesota Secretary of State, and has possession and control of the capital stock of the Debtor Subsidiaries. As of the Petition Date, the principal amount due and owing from the Debtor to ComVest was $13.25 million plus accrued interest of approximately $800,000.

9. On or about August 10, 2010, BMO Harris and ComVest entered into an Intercreditor Agreement pursuant to which they set forth the priority of their respective security interests in and/or liens on the Debtor's and the Debtor Subsidiaries' assets.

10. On January 5, 2010, IBM Credit LLC filed a precautionary financing statement with the Minnesota Secretary of State as lessor asserting a security interest in certain computer equipment.

11. Over the last two years, the Debtor has attempted to restructure its various

3

obligations out-of-court, but has been unsuccessful.[1]  The Debtor now has negative cash flow and needs substantial additional working capital, to successfully resolve its financial issues.

12.    On October 16, 2013, the Debtor filed its motion pursuant to 11 U.S.C. §§ 361, 363, and 364 seeking authority to use cash collateral in which BMO Harris and ComVest have an interest, and seeking to obtain postpetition financing from AVX Learning, LLC ("AVX Learning"), an affiliate of ComVest, in an amount up to $1,000,000. On October 18, 2013, the Court conducted an interim hearing and granted that motion.

## THE CHAPTER 11 CASE

13.    The purpose of the chapter 11 case is to facilitate a sale of substantially all of the Debtor's assets, including the capital stock of the Debtor Subsidiaries, to AVX Learning, or to a third-party purchaser, as circumstances warrant.

14.    By this Motion, the Debtor seeks authority to sell substantially all of its assets, including the capital stock of the Debtor Subsidiaries.  A copy of the proposed form of an Asset Purchase Agreement ("APA") is attached hereto as **Exhibit A**. The sale will be free and clear of liens, claims, interests, and encumbrances, with valid liens to attach to the proceeds of the sale, and subject to higher and better offers. To that end, simultaneously with the filing of this Motion, the Debtor has filed its "Motion to Establish Bidding Procedure's for the Sale of Substantially All the Assets of Adayana, Inc. and Establishing Auction and Hearing Dates," seeking to establish procedures by which interested parties may bid on the assets of the Debtor at public auction.

15.     The Debtor believes the sale of substantially all of its assets is in the best interest of the estate and creditors.   Moreover, under the terms of its post-petition financing arrangement

---

[1] A detailed summary of these efforts will be filed with the Court before the hearing on this Motion.

4

with AVX Learning, the Debtor is required to sell substantially all of its assets by December 16, 2013.

### III. Marketing of the Assets

16.     The Debtor defaulted under the ComVest loan document in 2011. As described briefly in the testimony on October 18, 2013, for the last two years, the company employed several different firms to obtain new debt or equity financing. Through those firms and other contacts, the company met or spoke with many dozens of potential investors.

17.     Throughout the spring and summer of 2013, the Company and ComVest labored diligently to effect a consensual restructuring involving them, BMO and the Debtor's preferred shareholder, an affiliate of Kubera Partners LLC. After several serious third parties submitted offers that were not acceptable to ComVest, the Debtor and ComVest focused on a consensual "debt for equity" recapitalization. Those efforts proved unsuccessful and cash constraints were negatively affecting the Debtor's and the Debtor Subsidiaries' continued operations, necessitating this Chapter 11 filing.

### IV. The APA

18.     In accordance with Local Bankruptcy Rule B-6004-1, the relevant terms of the APA include the following:

   a. <u>Sale Assets</u>. Pursuant to the purchaser will purchase substantially all of the Debtor's assets, including but not limited to the capital stock of the Debtor Subsidiaries, cash and cash equivalents, receivables, and the Debtor's interest as lessee under its leases (collectively, the "<u>Sale Assets</u>," APA, at § 2.1). The

purchaser will assume only those Assumed Liabilities[2] identified in Section 2.2(a), and the APA specifies certain Excluded Liabilities (APA, § 2.2(b)).

b. <u>Purchase Price</u>.  The price will be determined by the purchaser in accordance with the sale procedures being proposed in a separate motion.

c. <u>Conditions to Closing</u>. Section 7 provides the conditions that must be satisfied for the sale to be consummated. The Debtor's obligations to close are set forth in Section 7.1, and include entry of a final order approving the sale. Purchaser's obligations to close are set forth in Section 7.2, and include the requirement that (i) all of the Debtor's representations and warranties be true and correct at the time of closing.

d. <u>Closing</u>. Pursuant to Section 2.7 of the APA, closing is to take place within three days following satisfaction or waiver of the conditions set forth in Section 7. Pursuant to Section 8 of the APA, however, either party may terminate the agreement if closing has not taken place by December 16, 2013.

e. <u>Personally Identifiable Information</u>. While purchaser may, at its option, extend offers of employment to all or any employees of the Debtor or the Debtor Subsidiaries, the sale to purchaser does not include the sale of any Personally Identifiable Information as defined in 11 U.S.C. § 101(41A).

f. Such other terms and conditions as the successful purchaser may require and the Debtor may accept, all in accordance with the proposed sale procedures.

## V. Interests in the Sale Assets

19.    BMO Harris has a prepetition, secured interest in substantially all of the Debtor's assets, *excluding* the capital stock of the Debtor Subsidiaries, by virtue of the Debtor's

---

[2] All capitalized terms not defined herein shall have the meaning ascribed to them in the APA.

obligation to guaranty the indebtedness of the Debtor Subsidiaries under the March 20, 2008 Credit Agreement.

20. ComVest has a prepetition, secured interest in substantially all of the Debtor's assets, including the capital stock of the Debtor Subsidiaries, arising from the Debtor's obligations to ComVest under the August 1, 2010 Loan Agreement.

21. IBM Credit LLC asserts a prepetition, secured interest in certain computer equipment of the Debtor.

22. AVX Learning has a postpetition, secured interest in substantially all of the Debtor's assets, including the capital stock of the Debtor Subsidiaries, by virtue of the obligations owing from the Debtor to AVX Learning under the post-petition financing order.[3]

23. There are no other perfected interests in the Sale Assets.

## VI. Basis for Relief Requested
### a. 11 U.S.C. § 363

24. Section 363(b)(1) of the Bankruptcy Code authorizes a debtor-in-possession to sell or lease property other than in the ordinary course of business after notice and a hearing. Generally speaking, a Court will approve a proposed sale or lease of property outside the ordinary course of business if such a sale or lease represents sound business judgment. See, e.g., In re Lionel Corp., 722 F.2d 1063, 1070-71 (2d Cir. 1983); In re Allegheny Int'l, Inc., 117 B.R. 171, 176-77 (W.D. Pa. 1990); In re Stroud Ford, Inc., 163 B.R. 730, 732 (Bankr. M.D. Pa. 1993). Such a sale or lease must be proposed in good faith. In re Abbotts Dairies, Inc., 788 F.2d 143, 147-50 (3rd Cir. 1986); In re Lionel Corp., 722 F.2d at 1070-71; In re Allegheny Int'l, Inc., 117 B.R. at 176-77; In re Indus. Valley Refrigeration & Air Conditioning Supplies, Inc., 77 B.R. 15,

---

[3] Pursuant to an agreement between AVX Learning and ComVest, ComVest will assign and AVX Learning will assume a portion of the amount due and owing from the Debtor to ComVest under the August 1, 2010 Loan Agreement, and AVX Learning may subsequently credit bid that amount at the auction of the Sale Assets pursuant to 11 U.S.C. § 363(k).

7

21 (Bankr. E.D. Pa. 1987).

25. Section 363(f)(2) of the Bankruptcy Code provides that a sale may be free and clear of any interest in such property of an entity other than the estate if such entity consents. The primary secured creditors in this case (BMO Harris, ComVest, and AVX Learning) will all need to consent to the sale contemplated in the APA free and clear of their liens, claims, and encumbrances. The Debtor believes that a sale conducted in accordance with the proposed sale procedures will result in a sale to which BMO and ComVest will consent at the Sale Hearing.

26. The only remaining secured creditor, IBM Credit LLC, has a limited security interest in certain of the Debtor's computer equipment. IBM Credit LLC filed a precautionary financing statement as a lessor of that equipment. The Debtor does not believe the underlying agreement is a true lease, but rather a financing agreement. In addition, the Debtor does not believe IBM Credit LLC took the steps necessary to perfect a purchase money security interest in the computer equipment. The Debtor believes that at or prior to a hearing on this Motion, IBM Credit LLC will consent to the relief sought herein. If the Debtor is unable to obtain the consent of IBM Credit LLC, it will either surrender the computer equipment to IBM Credit LLC in full satisfaction of its secured claim, or proceed under 11 U.S.C. §§ 363(f)(1) and/or (f)(4).

27. The APA will be negotiated at arms-length and in good faith. Accordingly, the Debtor requests that the Court make a finding that the purchaser is a good-faith purchaser entitled to the protection of 11 U.S.C. § 363(m).

28. The Debtor also requests that if no objections are filed or pending at the time of hearing on this motion, that the Court waive the 14-day stay imposed by Rule 6004(h) of the Federal Rules of Bankruptcy Procedure.

**b. 11 U.S.C. § 365**

29.     The APA provides that the Debtor may assume certain of its executory contracts and unexpired leases and assign those contracts and leases to the purchaser. Section 365(a) of the Bankruptcy Code provides that, subject to certain restrictions, the Debtor may do so with Court approval and in the exercise of sound business judgment. Sound business judgment requires a demonstration by the Debtor that assumption of the leases will benefit the estate. See, e.g., Sharon Steel Corp. v. Nat'l Fuel Gas Dist. Corp., 872 F.2d 36, 40 (3d Cir. 1989) (citation omitted); In re Buckhead Am. Corp., 180 B.R. 83, 833 (D. Del. 1995) (citation omitted).

30.     Certain leases and contracts may be an integral part of the APA and the Debtor's and the Debtor Subsidiaries' businesses may not be effectively operated without those leases and contracts. The Debtor therefore believes that any purchaser might be unwilling to proceed under the APA without the assumption and assignment of the designated leases and contracts. Accordingly, the decision by the Debtor to assume these leases and contracts pursuant to the APA is a clear exercise of its sound business judgment.

31.     Pursuant to 11 U.S.C. § 365(b), the Debtor may only assume unexpired leases and executory contracts if existing defaults are cured. The Debtor has reviewed its leases and contracts and all of its underlying obligations, and the Debtor believes that it is not in default under the terms of any lease or contract to be assumed. Accordingly, no cure, compensation, or adequate assurance of future performance is required under 11 U.S.C. § 365(b)(1) to assume and assign such leases and contracts. To the extent such payments are required, however, the APA provides that the Debtor will make those payments with cash on hand.

32.     A preliminary listing of the leases and executory contracts to be assumed by the Debtor and assigned to the purchaser will be filed with the Court before the final hearing on this Motion. Debtor and the contra-parties will be given notice thereof.

WHEREFORE, the Debtor requests that entry of an Order (a) authorizing the sale of substantially all of the Debtor's assets in one or more transactions free and clear of liens, claims, interests, and encumbrances pursuant to 11 U.S.C. § 363(b) and (f), with valid liens to attach to the proceeds of the sale; (b) finding that the purchaser is a good-faith purchaser entitled to the protection of 11 U.S.C. § 363(m); (c) waiving the 14-day stay imposed by Rule 6004(h) of the Federal Rules of Bankruptcy Procedure if no objections are filed or pending at the time of hearing on this motion; and (d) granting all other proper relief.

DATED: October 25, 2013        ADAYANA, INC.,
                               Debtor and debtor-in-possession,


                         By:   /s/  Michael P. O'Neil
                               Michael P. O'Neil, One of its proposed counsel

Michael P. O'Neil
TAFT STETTINIUS & HOLLISTER LLP
One Indiana Square, Suite 3500
Indianapolis, Indiana 46204-2023
Telephone: (317) 713-3500
Facsimile: (317) 713-3699
Email: moneil@taftlaw.com


1962429