UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| IN RE: | ) |
| | ) |
| ADAYANA INC., | )  Case No. 13-10919-RLM-11 |
| | ) |
|       Debtor. | ) |
| _____ | ) |

**MOTION TO ESTABLISH BIDDING PROCEDURES FOR THE
SALE OF SUBSTANTIALLY ALL THE ASSETS OF ADAYANA, INC.
AND ESTABLISHING AUCTION AND HEARING DATES**

Adayana, Inc., as debtor and debtor-in-possession (the "Debtor"), by counsel, hereby respectfully requests the entry of an Order (the "Bid Procedures Order") pursuant to 11 U.S.C. §§ 105(a), 363, and 365, Federal Rule of Bankruptcy Procedure 2002, 6004, and 6006 and Local Rule B-6004-1 establishing certain bidding procedures in connection with *Debtor's Motion Pursuant to 11 U.S.C. §§ 363 and 365 for (A) Authority to Sell Substantially All of the Debtor's Assets Free and Clear of Liens, Claims, Interests, and Encumbrances, with Valid Liens to Attach to Proceeds of Sale, and (B) Assumption and Assignment of Certain Executory Contracts and Unexpired Leases to Attach to the Proceeds of the Sale* (the "Sale Motion") filed by the Debtor contemporaneously herewith. The Debtor also requests that the Court establish dates for a bid deadline, an auction of the assets to be sold, and a hearing on the Sale Motion. In support of its bid procedures motion, the Debtor states as follows:

**Jurisdiction and Venue**

1. The Debtor filed a voluntary petition under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") on October 14, 2013 (the "Petition Date")

1967277v2

and continues to operate its business as a debtor-in-possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in this case.

2.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a "core" proceeding under 28 U.S.C. §§ 157(b)(2)(N) and (O).  The relief requested flows from the statutory scheme codified by the Bankruptcy Code, addresses an area of law long determined by Bankruptcy Courts, and is purely a creature of federal law.  Accordingly, this Court has jurisdiction and authority to hear this matter and enter final orders under *Stern v. Marshall*, 131 S. Ct. 2594, 180 L.Ed.2d 475 (U.S. 2011) and *In re Ortiz*, 665 F.3d 906 (7th Cir. 2011).

### Background

3.      As discussed in the Debtor's first day motions, the Debtor filed this Chapter 11 case to provide a better forum to sell substantially all of its assets.

4.      The Sale Motion seeks Court authority to sell substantially all of the Debtor's assets free and clear of all liens, claims, interests and encumbrances, except as provided in the sale documents, to the buyer making the highest and best offer.

5.      The Debtor, through this Motion, seeks to establish the procedures for bidding on the Debtor's assets, establish an auction date for the sale of the Debtor's assets, and set a hearing on approval of such sale.

### The Proposed Bid Procedures

6.      The Debtor proposes to sell substantially all of its assets (the "Acquired Assets") substantially consistent with the terms set forth in the form of asset purchase agreement (the "APA") attached to the Sale Motion as Exhibit A.  Any capitalized terms not otherwise defined in this Motion have the meanings set forth in the APA or its

exhibits. The APA contemplates the Debtor's sale of the Acquired Assets and the assumption and assignment of the Assumed Contracts and Leases identified in the APA (collectively, the "Transaction").

7. To maximize the value of the Aquired Assets, the APA contemplates a sale process to solicit offers for the Acquired Assets. The Debtor seeks approval of the Bid Procedures described in this Motion to solicit such offers. The Debtor will then conduct an auction (the "Auction") to determine the highest, best offer (or combination of offers).

8. The Debtor's proposed bid procedures (the "Bid Procedures") are set forth below. The Debtor believes these Bid Procedures will ensure that the Debtor has the opportunity to consider all reasonable offers and to select the highest, best offer.

*Qualified Bidders and Auction*

9. In order to participate in the bid process, a potential bidder (a "Potential Bidder") must deliver to Debtor an executed confidentiality agreement in a form acceptable to Debtor (a "Confidentiality Agreement"). A "Qualified Bidder" is a Potential Bidder that has duly submitted a Confidentiality Agreement and provided reasonable evidence of its ability to close. Only Qualified Bidders shall be permitted to conduct reasonable due diligence with respect to the Acquired Assets during the period prior to the Bid Deadline. AVX Learning, LLC ("DIP Lender") shall be deemed to be a Qualified Bidder, and any bids (including credit bids) made by DIP Lender at the Auction shall be deemed to be Qualified Bids. Each Qualified Bidder shall be entitled to request due diligence from Debtor upon execution of a Confidentiality Agreement.

10. In order for a Qualified Bidder to be permitted to participate in the Auction, such bidder will be required to deliver certain bid documents (the "Qualified Bid Documents") to respective counsel for the Debtor, DIP Lender and BMO Harris Bank ("BMO") by the Bid Deadline. The Qualified Bid Documents shall include:

   a. In respect of such Qualified Bid (other than one from the DIP Lender), a good faith deposit equal to $250,000 in cash (the "Transaction Deposit") shall be wired, in immediately available funds, to an escrow agent of Debtor's choosing pursuant to an escrow agreement reasonably acceptable to Debtor and the bidder. The Transaction Deposit shall not be subject to any claims, liens, security interests, or encumbrances, except as provided herein, and such funds shall be disbursed in accordance with these Bid Procedures.

   b. An executed clean copy of a definitive purchase agreement (and related exhibits and completed schedules thereto) (each such agreement (together with such exhibits and schedules) from a Qualified Bidder, a "Qualified PA") together with a red-line copy of such agreement marked to show changes to the APA. If the Qualified Bidder is an entity formed for the purpose of purchasing Acquired Assets, the Qualified PA must contain a commitment, acceptable to Debtor, DIP Lender and BMO in their business judgment, of the equity holder(s) of the Qualified Bidder to be responsible for the Qualified Bidder's obligations in connection with the purchase of Acquired Assets and contain terms (including the amount of cash consideration and provisions relating to assumption of Secured Lender debt) or other documentation evidencing such Qualified Bidder's ability to close on the transactions contemplate hereby.

11. In addition, in order for a bid submitted by a Qualified Bidder to be considered a Qualified Bid, it must satisfy the following requirements (collectively, the "Qualified Bid Requirements"):

   a. Such Qualified Bidder must fully disclose the identity of each entity that will be bidding or otherwise participating in connection with such bid, and the complete terms of any such participation.

   b. Such Qualified Bidder must acknowledge that: (w) it had an opportunity to conduct any and all due diligence regarding the Acquired Assets prior to submitting such bid; (x) it has relied solely upon its own independent

    review, investigation and/or inspection of any documents and/or the Acquired Assets in making such bid; (y) except for the representations and warranties contained in its Qualified PA, it did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Acquired Assets, or the completeness of any information provided in connection therewith or the Auction; and (z) its bid is not contingent upon completing due diligence, financing or any condition not contained in the APA.

    c.    Such Qualified Bidder must provide written evidence acceptable to Debtor and DIP Lender, in their business judgment, of such Qualified Bidder's financial ability to (x) consummate the transactions contemplated by its Qualified PA (including, without limitation, any debt or equity financing commitment) and (y) provide adequate assurance of future performance with respect to any executory contracts or unexpired leases it is seeking to have assumed and assigned to it under its Qualified PA.

12.    A bid received from a Qualified Bidder that includes all of the Qualified Bid Documents and satisfies all of the Qualified Bid Requirements is a "<u>Qualified Bid</u>." Notwithstanding the foregoing, Debtor may, with DIP Lender's consent, waive one or more of such bid requirements, in order to obtain the highest and best values. Debtor shall, in its business judgment, determine which of such Qualified Bids constitutes the highest and best offer (the "<u>Auction Starting Bid</u>"). For example, Debtor may determine in its business judgment, that a particular Qualified Bid that contains greater cash consideration at closing but a lower overall Purchase Price than an alternative Qualified Bid should constitute the Auction Starting Bid.

13.    Debtor may reject any bid that, in its discretion (i) is inadequate or insufficient; (ii) does not conform to the requirements of applicable bankruptcy laws or these Bid Procedures; or (iii) is contrary to the best interests of Debtor, its estate and its creditors.

14. The Debtor requests that the Court establish Monday, December 2, 2013 as the Bid Deadline. This is more than 21 days after the hearing on this Motion.

15. The Debtor proposes to then conduct the Auction at the offices of Debtor's counsel, Taft Stettinius & Hollister LLP located at One Indiana Square, Suite 3500, Indianapolis, IN 46204 on or about Wednesday, December 4, 2013. Only Qualified Bidders that submitted Qualified Bids on or before the Bid Deadline will be entitled to make subsequent Qualified Bids at the Auction.

16. If a party submits a Qualified Bid for less than all of the Sale Assets, for the stock of just one of the Debtor Subsidiaries, then the Debtor may conduct the Auction in such a way as to maximize value, by combining offers and/or by offering discrete parts of the Sale Assets in multiple lots, with the consent of the DIP Lender and BMO.

17. During the Auction, bidding will begin at the Purchase Price stated in the Auction Starting Bid, and the first bid thereafter shall be at least $100,000 higher than the Auction Starting Bid. All subsequent bids will be made in increments of at least $50,000. The Debtor shall review the bids and, with the consent of the DIP Lender and BMO, announce the highest and best bid as the Successful Bid and the next highest as the Runner-up Bidder. The Debtor will file a notice with the Court identifying the Successful Bidder and Runner-up Bidder, if any, prior to the Sale Hearing defined below.

18. The Debtor requests that the Court schedule a hearing to approve the sale (the "Sale Hearing") on a date promptly following the Auction that is convenient for the Court. The Debtor believes that the schedule it proposes will permit potential bidders to conduct reasonable due diligence and interpose competitive bids for the Acquired Assets

and enable the Debtor to meet the outside date by which it agreed with the DIP Lender to consummate a sale.

19. The Debtor believes the Bid Procedures are fair and reasonable and will ensure that the sale process maximizes the value of the Debtor's estate. Accordingly, the Debtor requests that the Court enter the Bid Procedures Order.

*Executory Contracts and Unexpired Leases*

20. Not later than November 22, 2013, the Debtor shall provide notice to all counterparties to executory contracts and unexpired leases that may be assumed and assigned to the Buyer (the "Assumption and Cure Notice"). The Assumption and Cure Notice shall provide counterparties notice of the amount the Debtor believes must be cured upon assumption and assignment pursuant to Section 365 of the Bankruptcy Code.

21. The proposed form and manner of the Assumption and Cure Notice is reasonably calculated to provide interested parties with timely, proper notice of (i) the title of the contract or lease to be assumed and assigned; (ii) the name of the counterparty to such contract or lease; (iii) any applicable cure amount; and (iv) the deadline by which the counterparty must object. The Debtor submits that no other notice is required.

22. Except as otherwise provided in the APA or agreed to by the parties to an assumed contract or lease, the Buyer shall pay the cure amounts in cash. In the event of a dispute regarding the cure amount for an assumed contract or lease, the Buyer shall make any required payments as soon as practicable after entry of a final order resolving the dispute.

23. The Debtor requests the Court require objections, if any, to the proposed Transaction, including objections to the Debtor's proposed assumption and assignment of

contracts and leases objections and the proposed cure amounts and adequate assurances of future performance, (a) be in writing; (b) state with specificity the nature of the objection and the alleged cure amount; (c) include any documentation supporting the alleged cure amount; and (d) be filed with the Court and served on counsel to the Debtor (Taft Stettinius & Hollister LLP, Attn: Michael P. O'Neil, One Indiana Square, Suite 3500, Indianapolis, IN 46204), counsel to the DIP Lender (Jeremy Downs, Goldberg Kohn, Ltd., 55 East Monroe Street, Suite 3300, Chicago, Illinois 60603-5792), and counsel to the United States Trustee (Office of the United States Trustee, Attn: Ronald Moore, 101 E. Ohio Street, Indianapolis, IN 46204) before the Sale Hearing. The Debtor requests that any counterparty to an assumed contract or lease who fails to timely file an objection in accordance with this paragraph be deemed to consent to the assumption and assignment of its lease or contract on the terms proposed by the Debtor.

24.  Except as otherwise provided in the APA, the Debtor requests that the buyer have ten days following the Court's resolution of any disputes with respect to assumed contracts and leases to determine whether a contract or lease will be assumed and assigned.

### *Effect of the Transaction*

25.  Following the Sale Hearing, the Debtor requests that the Court enter the Sale Order. Among other things, the Sale Order will approve the form and manner of notice of the sale, authorize the Debtor to enter into the APA, approve the Debtor's assumption and assignment of the Assumed Contracts and Leases, and direct the Debtor, the Buyer, and all parties in interest to take steps reasonably necessary to effectuate the APA.

**Relief Requested**

26.     Based on the foregoing, the Debtor respectfully requests that the Court approve the bidding procedures outlined herein and schedule a hearing on the Sale Motion on the date requested.

27.     Furthermore, the Debtor respectfully requests that the Court waive the fourteen (14) day stay provided in Rule 6004 so as to allow the Closing to occur as expeditiously as possible.

28.     Section 363(b)(1) of the Bankruptcy Code provides that a trustee may sell property of the estate outside of the ordinary course of business after notice and a hearing.  Section 105(a) of the Bankruptcy Code provides that the Court may enter such orders as are necessary or appropriate to carry out the provisions of the Bankruptcy Code.

29.     Authorizing the bidding procedures outlined herein furthers the interests of the Debtor and its creditors.  Hopefully, these procedures will not only produce a Buyer that will offer the highest and best price for the Sale Assets but also provide the Debtor with a bidder who will continue the Debtor's businesses.

WHEREFORE, the Debtor respectfully requests the entry of an Order: (1) approving the bidding procedures outlined herein; (2) approving the Bid Deadline and date for Auction; (3) scheduling the Sale Hearing promptly following the Auction or otherwise as soon as practicable after the Auction; and (4) granting the Debtor such other and further relief as the Court deems proper.

DATED: October 25, 2013     ADAYANA, INC.
                            as debtor and debtor-in-possession,

                       By:  /s/ Michael P. O'Neil
                            Michael P. O'Neil, one of its proposed counsel


Michael P. O'Neil
Jeffrey J. Graham
TAFT STETTINIUS & HOLLISTER LLP
One Indiana Square, Suite 3500
Indianapolis, IN 46204
Telephone: (317) 713-3500
Facsimile: (317) 713-3699
Email: jgraham@taftlaw.com

**CERTIFICATE OF SERVICE**

      I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished via the U.S. Bankruptcy Court's electronic transmission service, via email or via first class, postage-prepaid U.S. mail to all persons listed on the attached Service List on this 25th day of October 2013. Method of service is indicated on the Service List.

                                      /s/ Michael P. O'Neil
                                      Michael P. O'Neil